UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RODNEY LEE LYON,

    Plaintiff,

vs.                                                                                       Case No.

GARY BORDERS, in his official capacity as Sheriff of Lake County,
Florida, PEYTON C. GRINNELL, in his official
capacity as Sheriff of Lake County, Florida, and
BRET RUTZEBECK, individually,

    Defendant(s).

_____/

**COMPIAINT AND DEMAND FOR JURY TRIAL**

    COMES NOW, Plaintiff, RODNEY LEE LYON, by and through his attorney, Young B. Kim of Young's Law Firm, P.A., files this Complaint and Demand for Jury Trial, and sues Defendant(s) GARY BORDERS, PEYTON C. GRINNELL, and BRET RUTZEBECK, for damages, jointly and severally, and alleges on knowledge as to their own actions, and otherwise upon information and belief, as follows:

**JURISDICTION**

    1.    This Court has jurisdiction over this action pursuant to Title 42 U.S.C. Section 1983 and Title 28 U.S.C. Section 1343, seeking damages including costs of litigation, and reasonable attorney fees, against Defendant(s) GARY BORDERS ("BORDERS"), PEYTON C. GRINNELL ("GRINNELL"), and BRET RUTZEBECK ("RUTZEBECK") for committing acts,

1

under the color of law, which deprived Plaintiff of his rights secured by the Fourth and Fourteenth Amendments to the Constitution and law of the United States.  This Court has original jurisdiction pursuant to Title 28 U.S.C. Section 1331 and 1367.

2.   Plaintiff RODNEY LEE LYON ("LYON") also seeks the Supplemental Jurisdiction of this Court, pursuant to 28 U.S.C. 1367, against Defendants BORDERS, GRINNELL, and RUTZEBECK for intentional and negligent acts committed under the common law of the State of Florida, in that such claims derive from a common nucleus of operative facts and are so related to the claims in this action within the Court's jurisdiction, that they form part of the same case or controversy.

3.   Defendant(s) BORDERS, GRINNELL, and RUTZEBECK, at all times material Hereto, were employed by the Office of Sheriff of Lake County and were acting individually, as well as under color of authority of the laws of the State of Florida.  Defendant(s) BORDERS and GRINNELL, were, at all times material hereto, employed by the Office of Sheriff of Lake County and was acting in his official capacity as Sheriff under color of authority of the laws of the State of Florida.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that all of the events and actions giving rise to the claims contained herein occurred in this district.

## PARTIES

5.  Plaintiff is an individual who lives in 10119 Tween Waters St., Clermont, Fl 34715.

6. Defendant GARY S. BORDERS is the former Lake County Sheriff.  Plaintiff sues Defendant in his official capacity.

7. Defendant PEYTON C. GRINNELL is the current Lake County Sheriff.  Plaintiff sues Defendant in his official capacity.

8. Defendant BRET RUTZEBECK is currently serving as a corporal at the Agricultural and Marine Division of the Lake County Sheriff's Department and was, at all times, employed by the Lake County Sheriff's Department during the events and actions giving rise to the claims contained herein.

## GENERAL ALLEGATIONS

9. On or about May 31, 2016, animal nonprofit organization Ruff Times Rescue began to post alleged defamatory social media animal abuse allegations about LYON and his Arabian mare named "Gigi" on its Facebook site. This nonprofit organization, then, lodged a complaint with the Lake County Sheriff''s Office Animal Services and Lake County Department of Agriculture about the alleged mistreatment of Plaintiff's Arabian mare named Gigi.

10. On or about June 2, 2016, Noble Island Ranch and Rescue posted alleged defamatory social media animal abuse allegations to prompt Lake County's Sheriff's Office, The Lake County Animal Services Office, and the Board of Lake County Commissioners to hold LYON accountable to the law.

11. Due to the mounting pressure from the Ruff Times Rescue and Noble Island Ranch on the Board of Lake County Commissioners, Lake County's Sheriff' Office Animal Services, and Lake County Agriculture Department, and two nonprofit organization's defamatory social media abuse allegations published in the public eye, the Lake County Sheriff Department moved to hold LYON accountable for animal abuse on Gigi, the Arabian mare, even though there was no merit to prosecute this matter.

12. On June 1, 2016, on or about 8.53 a.m., RUTZEBECK arrived on LYON's property, responding to the animal abuse complaints.

13. On June 1, 2016, on LYON's premise, RUTZEBECK made contact with LYON. LYON informed the RUTZEBECK of the following that:   that he owned an Arabian mare named

Gigi for approximately 18 years, which is located at 19804 US HWY 27, Clermont, Fl, the horse was approximately 18-years old, suffered from Laminitis, possessed the mare since 8-months old, suffered from a genetic defect in her hooves since he had her, and was under the care of veterinarian Dr. David Burba.

14.  On June 1, 2016, on the premise, RUTZEBECK took photos of the mare, placed them as evidence under property receipt 267834, which allegedly shows that the mare's front hooves were causing discomfort to the horse.

15. On June 1, 2016, RUTZEBECK found that LYON was providing the mare 6-quarts a day Seminole Senior Feed, HB15 Hoof Supplement, Vitamin E, Selenium, Calcium, Magnesium 500, and Bute (pain medication for the Laminitis).

16.  On June 1, 2016, RUTZEBECK observed that the horse was provided with granular feed and alfalfa hay.  LYON informed RUTZEBECK that he feeds the horse twice a day in reference to the mare's medical condition, will provide additional documentation reference of the mare over the last year, and that LYON wanted to keep the mare and continue treating the mare's hoof issues with the veterinarian.

17.  On June 1, 2016, RUTZEBECK contacted veterinarian Dr. David A Burba.  Dr. Burba provided a report to RUTZEBECK that:  he had evaluated the horse a day before on May 31, 2016, he had seen the horse for the last 7 years in reference to the Laminitis issues, Gigi "still had a quality of to her life that warranted giving her more time," and even though trimming the horse's hooves short could exacerbate the condition of the mare's Laminitis, LYON agreed to trim the horse feet with a Ferrier on June 3, 2016, at 2.30 p.m.  RUTZEBECK placed the vet report as property receipt #267830.

18. On June 1, 2016, RUTZEBECK took a sworn affidavit from LYON in which LYON stated that the mare at 8 months old was discovered to have a genetic defective hoof health condition.

19. On June 3, 2016, on or about 2.30 p.m. at LYON's property, RUTZEBECK, accompanied by Corporal M. Farner #1724, met with LYON, Dr. David Burba, and the Farrier.

20. On June 3, 2016, both Corporal Rutzebeck and Corporal Farner witnessed Dr. Burba sedate the horse, and Farrier Brian Courson trim Gigi's front left hoof. RUTZEBECK photographed this event and determined that the hoof had a concave sole with the promise of correction and sloughing of the hoof. These photographs were placed into evidence as Property receipt #267833. However, Dr. Burba had reported that on May 31, 2016, he did not witness the separation and swelling of the mare's hoof.

21. On June 3, 2016, Dr. Burba informed LYON that the damage to the coffin bone, as well as the coronary band, would cause the hoof to totally separate from the bone. He further determined that LYON took all measures to save the horse, but unfortunately the horse had to be euthanized.

22. LYON alleges that RUTZEBECK did not possess appropriate professional or medical qualifications to make medical opinions and observations about the health and condition of the mare, Gigi.

23. LYON alleges that based on RUTZEBECK's unqualified observations and opinions, he attempted to create a false narrative in which LYON was directly responsible for the mare's medical condition and damage to the horse's hooves.

24. Initially, RUTZEBECK intended to charge LYON with Florida Statute 828.12(2)-Felony Animal Cruelty, but Dr. David A. Burba, the star witness and expert witness in this matter, refused to cooperate with the Lake County Sheriff Department. His refusal to

cooperate was based on his professional observations and medical opinion that LYON took all measures to provide proper maintenance, nourishment, and medical care for the mare, Gigi, and that he simply did not believe in RUTZEBECK's accusations and unqualified observations and opinions.

25.  Thereafter, on or about June 3, 2016, RUTZEBECK charged LYON with a lessor misdeamor count of "unintentionally animal cruelty and neglect" to LYON's 18-year-old Arabian mare.

26.  On June 6, 2016, at around 12.30 p.m., Deputy Rutzebeck met with LYON to provide him with a sworn affidavit, explaining the details of his feeding program for his 18-year-old mare, 7 pages of feeding receipts from Clermont Irish Feed Store and Supply, submitted into evidence as property receipt #267157, Dr. Burba's vet report, and veterinarian history sheet for the mare, submitted into evidence as property receipt #267147.

27. The sworn affidavit made by LYON on June 6 2016 stated that LYON hired Farrier in 2008 to do corrective shoeing.  However, the Farrier recommended that the shoeing could not be done because the hoof walls on the side of the hoof were too thin to nail on shoes, and glue on shoes would also not work.

28.  On September 13, 2016, the State dropped the misdemeanor charge against LYON by filing a Nolle Prosequi based on the following grounds, "Given the testimony of the veterinarian in this case, the State cannot prove the elements of the offense beyond a reasonable doubt."

**COUNT I**
**Violation of Civil Rights of RODNEY LYON Pursuant to 42 U.S.C. §1983 Against Sheriff GARY BORDERS, PREDECESSOR, PEYTON C. GRINNELL, for the June 3, 2016 Charge of Animal Cruelty**

29. LYON repeats and realleges paragraphs 9 through 28, above as if fully set forth herein and further alleges:

30. Defendant BORDERS, as Sheriff of the Lake County, Florida Sheriff's Office, and his predecessors in office, GRINNELL, have, over time, established policy and custom of failure to provide timely, appropriate, and adequate oversight of deputies in the execution of their duties and have failed to investigate complaints regarding the execution of those duties.

31. BORDERS and his predecessor, GRINNELL, have established a policy and custom of failure to train and administer adequate discipline to deputies despite a continued pattern of misconduct in the execution of law enforcement duties by deputies and has established a policy and custom of failing to properly train deputies in the law regarding probable cause and the conduct of an investigation of the kind initiated for the incident as alleged above.

32. Such policies and customs constitute deliberate indifference to the risk that citizens of Lake County will be subject to unlawful seizure during an investigatory stop, excessive force in making such unlawful seizure detention, and prosecution, and have contributed to an atmosphere of tolerance for misconduct, and such policies and customs are tantamount to deliberate indifference to LYON's constitutional rights as secured by the Fourth and Fourteenth Amendments to the Constitution of the United States.

33. In addition, these policies and customs failed to take into consideration the lives and well-being of Lake County deputies and other law enforcement personnel who needlessly respond to calls for assistance from deputies who subject citizens to unlawful seizure during an investigatory stop, excessive force in making such unlawful seizure detentions, and prosecution.

34. Furthermore, these policies and customs fail to take into consideration the lives and well-being of citizen bystanders who may be unintentionally hurt by deputies who needlessly

respond to calls for assistance from deputies who subject citizens to unlawful seizure during an investigatory stop, excessive force in making such unlawful seizure detentions, and prosecution.

35. The unlawful seizure of LYON and his property based on a conspiracy to fabricate both a felony and a lesser included misdemeanor offense by BORDERS as well as his predecessor PEYTON; and prosecution of LYON were directly attributable to BORDERS' as well as his predecessor PEYTON's policies and customs that permeate their Department with regard to inadequate oversight, the inadequate discipline of deputies despite a pattern of misconduct, and inadequate training of deputies in the execution of their law enforcement duties.

36. On June 3, 2016, RUTZEBECK without probable cause charged LYON with "unintentionally animal cruelty and neglect to the [Plaiintiff's] 18-year-old Arabian mare, Gigi," even after obtaining Dr. Burba's report that Gigi "still had a quality to her life that warrants giving her more time, LYON agreeing to take remedial measures to trim the horse's feet, the evidence that horse was receiving good medical care, information about the special dietary feed for the mare to help with the mare's genetically predisposed condition of Laminitis, and LYON's willingness to provide additional documentation of the mare's care and maintenance to RUTZEBECK.

37. RUTZEBECK did not demonstrate a sense of concern for the exculpatory evidence and the testimony of Dr. Burba, which was presented before him, which is a direct result of the policies and customs established by BORDERS as well as his predecessor PEYTON.

38. RUTZEBECK's response to the exculpatory evidence about the care and maintenance of LYON's mare was one of indignation as opposed to professional responsiveness to determine whether RUTZEBECK's animal cruelty and neglect charge had any merit and should be further investigated.

39. The lack of further investigation after June 3, 3020 over LYON's animal cruelty and neglect charge demonstrates a systematic failure within the Lake County Sheriff's Department and the leadership of BORDERS as well as his predecessor PEYTON to address the citizen's concern as they relate to their protected constitutional right to be free from malicious prosecution, unlawful searches and seizures by deputies who are acting outside the scope of their authority or immunity.

40. BORDERS as well as his predecessor PEYTON, as heads of the Lake County Sheriff's Department, are ultimately responsible for not only setting the law enforcement policies and customs of the Department and their deputies interactions with citizens but also departmental policy guided by the U.S. Constitution as it relates to investigations and charges.

41. BORDERS as well as his predecessor PEYTON, have cultivated and encouraged an environment within the Lake County Sheriff's Department whereby his deputies feel comfortable and entitled to unlawfully threaten and intimidate citizen of their choosing, with impunity, that let to the violation of LYON's constitutional rights against malicious prosecution.

42. RUTZEBECK's plan to charge LYON with "unintentionally animal cruelty and neglect" on June 3, 2020 was a direct and proximate cause of the leadership environment cultivated, created, and maintained under the direct supervision of BORDERS as well as his predecessor PEYTON.

43. As a direct and proximate result of such policies and customs, as alleged above, LYON has suffered damages, including but not limited to humiliation, mental anguish, and has suffered the loss of reputation, and loss of capacity for the enjoyment of life.

44. LYON has been required to engage the services of the undersigned counsel and to pay him a reasonable fee for his services, and he entitled to reimbursement therefor from BORDERS as well as his predecessor PEYTON, pursuant to the provision of 42 U.S.C. Section

1983.

WHEREFORE, Plaintiff, RODNEY LYON, demands judgment for damages against Defendant(s) Sheriff BORDERS as well as his predecessor PEYTON, together with pre-judgment interest, attorneys' fees, and court costs.

## COUNT II
### Violation of Civil Rights of RODNEY LYON Pursuant to 42 U.S.C. § 1983 Against BRET RUTZEBECK for Malicious Prosecution for the June 3, 2020 Charge of Animal Cruelty and Neglect

45.   LYON repeats and realleges paragraphs 9 through 28, above as if fully set forth herein and further alleges:

46.   The criminal prosecution of LYON was the natural consequence of his misdeamenor animal cruelty and neglect charge without probable cause by RUTZEBECK.

47. RUTZEBECK violated the clearly established and well-settled federal constitutional rights of LYON, including, but not limited to, his Fourth Amendment right to be free from malicious prosecution when he was charged without probable cause. .

48.   The acts of RUTZEBECK, while on the job and acting under color of state law, deprived LYON of his right to be free from unreasonable seizure, the rightful institution of the legal process, and otherwise deprived him of due process of law in violation of the Constitution of the United States.

49.   On June 3, 2016, RUTZEBECK without probable cause charged LYON with "unintentionally animal cruelty and neglect to the [Plaiintiff's] 18-year-old Arabian mare, Gigi, even after obtaining Dr. Burba's report that Gigi "still had a quality to her life that warrants giving her more time, reassurances from LYON that he would take remedial measures to trim the horse's feet, exculpatory evidence that horse was receiving proper medical care, evidence of LYON providing the mare with special dietary feed to help with the mare's genetically

predisposed condition of Laminitis, and agreement that LYON would provide additional documentation of the mare's care and maintenance.

50.  As a direct and proximate result of the unconstitutional conduct of RUTZEBECK, as alleged above, LYON has suffered damages, including but not limited to humiliation, mental anguish, and has suffered loss of reputation, and the loss of the capacity for the enjoyment of life.

51. LYON has been required to engage the services of the undersigned counsel and to pay him a reasonable fee for his services, and he entitled to reimbursement therefor from RUTZEBECK, pursuant to the provision of 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff, RODNEY LYON, demands judgment for damages against Defendant RUTZEBECK, together with pre-judgment interest, attorneys' fees, and court costs.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, RODNEY LYON, demands judgment against Defendant(s) for:

(a) all damages resulting from the conduct described above;

(b) all court costs, expenses, and reasonable attorneys' fees;

(c) Additional and further relief as is just and proper.

Respectfully submitted,

By: /s/ Young B. Kim
60 East 5th St.
Apopka, Fl 32703
Fl. Bar No. 125417

Tel.#: 407-278-7177
Email: info@youngslawfirm.com
Fax#: 407-603-0122

12